United States District Court
District of South Carolina

| | | |
|---|---|---|
| Deon D. Jenkins, # 286150; | ) | C/A No. 0:05-2800-HFF-BM |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| South Carolina Department of Corrections; Jon Ozmint, SCDC Director; Oscar Faulkenberry, Warden; Ofc. Triplette; Ofc. Mahaffey; Ofc. Patterson; Betty Bowers; Ofc. Clyburn; Jacqueline Bracey; Sgt. Mendez, in their individual capacities; | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights. Although this action was originally filed in the South Carolina Court of Commons Pleas, Lancaster County, it was removed to this Court by the Defendants based on federal question jurisdiction. See 28 U.S.C. §§ 1331 and 1446.

The Defendants thereafter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 11, 2005. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on November 14, 2005, advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition on December 16,



1

2005. Defendants' motion is now before the Court for disposition.[1]

## Background

Plaintiff alleges in his "civil Complaint"[2] that he has been subjected to cruel and unusual punishment in violation of his constitutional rights by the Defendants "confiscating, and denying the Plaintiff adequate clothing, and confining the Plaintiff to a constantly cooled room during the winter of 2003 - 2004 at a time when the outside temperatures were frigid, and there was ice and snow and the ground from a recent snow storm. That Plaintiff was housed in such conditions from February 8, 2004 thru April 2004." Plaintiff seeks monetary damages in the amount of fifteen ($15,000) dollars. See generally, Complaint.

In support of his Complaint, Plaintiff has submitted an affidavit in which he attests that on February 8, 2004 he was charged with an institution infraction which resulted in his placement in the Special Management Unit (SMU) at the Kershaw Correctional Institution (KCI), where he is housed. Plaintiff attests in his affidavit that, prior to being placed in lock-up, his property had to be inventoried and packed for placement in property control storage. Plaintiff attests that he packed his property while the Defendant Mendez inspected and logged the property on an inventory sheet. Plaintiff attests that at that time, he had a Sony Walkman radio and headset which

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). However, in this case the Plaintiff has filed an *unverified* Complaint. Therefore, the undersigned has not considered the factual allegations set forth in the unverified Complaint as evidence in issuing a recommendation in this case.



was in good condition, and that the Defendant Mendez listed this property as being in good condition on the property inventory sheet. Plaintiff attests that, following his placement in lock-up, Mendez took his property to storage, where it was under the control of the Defendant Jacqueline Bracey. Plaintiff further attests in his affidavit that on March 12, 2004, Bracey gave his property to the Defendant Betty Bowers so that the Plaintiff could take out legal material, and that during this process Plaintiff noticed that his Sony headset was broken in half.

Plaintiff further alleges that when he was placed in lock-up he was allowed to take two brand new t-shirts with him "because it was cold in the SMU rooms, and it was the winter." Plaintiff alleges that on September 13, 2004, the Defendants Triplette, Patterson, Mahaffey and Clyburn came to his room for a "shak[e] down with the SCDC Rapid Response Team", at which time the Defendants took his t-shirts. Plaintiff attests that from February 13, 2004 through March 12, 2004 he was housed in "a constantly cooled room, and denied adequate clothing." Plaintiff attests that he sent several requests and grievances to the Warden concerning his cold room and inadequate clothing, but that his grievances were not processed and the Warden never responded. See Plaintiff's Affidavit.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Donald Beckwith, who attests that he is the Associate Warden at KCI, where Plaintiff has been incarcerated since August 7, 2002. Beckwith attests that SCDC Policy and Procedure GA-01.12 (Exhibit A-1 to his affidavit) provides a procedure for inmates to grieve issues within the SCDC, and that pursuant to § 7(a)(4), inmate property complaints are grievable. Beckwith attests that the issues raised by the Plaintiff in his Complaint concerning damage to his Walkman or confiscation of his t-shirts would have been grievable so long as he filed his grievance within fifteen



3

(15) days of the alleged incident pursuant to GA-01.12(14). Beckwith attests that he has reviewed the inmate grievances filed by the Plaintiff from January 2003 through July 2004 (Exhibit A-2 to his affidavit) and finds no reference to the Plaintiff having grieved the issues related to his headset or t-shirts. Beckwith attests that inmate grievances are maintained by the SCDC during the ordinary course of business.

Beckwith further attests that Plaintiff was housed in the SMU at KCI from February 8, 2004 through April 20, 2004, and that attached to his affidavit as Exhibit A-3 are the SCDC Health Services System/Display Soap notes, which are maintained by the SCDC during the ordinary course of business. Beckwith attests that Plaintiff was transferred from KCI to the Allendale Correctional Institution (ACI) on May 25, 2004, and was housed at that institution until December 30, 2004, when he was transferred back to KCI. Finally, Beckwith attests that SCDC Policy OP-22.12(31.1) (attached as Exhibit A-4 to his affidavit) restricts male inmates in the SMU to three pairs of underwear and a jumpsuit. See generally, Beckwith Affidavit, with attached Exhibits.

The Defendants have also submitted an affidavit from Wayne Page, who attests that he is the building and grounds manager at KCI. Page attests that there are ninety-six (96) cells in the SMU at KCI, which are cooled or heated by four air handlers. Page attests that the temperature in the SMU is maintained at 72°, and that he has reviewed the SMU records for purchase orders or work orders for the period covering February 2004 through May 2004 and can find no record of any work or repair orders that would have impacted on the normal temperature in the SMU. Page further attests that he is at KCI on a daily basis, and that he has no independent recollection of any problems in the SMU concerning temperature changes during the period of time February to May 2004. Page Affidavit.



In opposition to the Defendants' motion, Plaintiff has submitted several exhibits. Plaintiff's Exhibit A is a copy of a request to staff member dated December 27, 2002, which makes a general complaint about a grievance coordinator. The disposition section of this form reads: "please give me specifics of your complaint." Plaintiff's Exhibit B is a request to staff member form dated May 14, 2005,[3] in which Plaintiff writes that in March 2004, when he was housed in the SMU, he was going through his property to get some legal materials and noticed that his Sony headset had been broken in half. Plaintiff inquires in this request to staff member as to whether an incident report was filed as a result of this incident. The disposition section of this form reads: "will talk with Ms. Harden about this matter." Plaintiff's Exhibit C is a letter from him to a "Mrs. Bowie" dated April 25, 2004 asking her to look into his complaint about a grievance not being timely served. This letter reads, in part, "staff lost my keys and broke my headset not to mention to losing two (2) brand new t-shirts. I grieved these issues over three (3) months ago and wrote requests. Ms. Mitchell did nothing to replace my lost or damaged property and these and other grievance have well exceeded policy guidelines." Plaintiff's Exhibit D is an inmate grievance form (Step 1) dated April 25, 2004, where he complains about grievances not being processed, and about having not gotten responses to his grievances. The informal resolution section of this grievance form reads as follows: "Your grievance is being returned to you unprocessed due to your failure to submit your grievance through the Institutional Grievance Coordinator (IGC) as required by SCDC Procedure GA-01.12, "Inmate Grievance System." However if this problem is continuing, you may submit a <u>new</u> grievance form and <u>place it in the grievance box at Kershaw</u>." Plaintiff's Exhibit F is a request to

---

[3]The Complaint and affidavit filed by the Plaintiff in this case are both dated March 2005, two months prior to Plaintiff's Exhibit B.

staff member form dated January 20, 2005, which in part seeks information concerning a grievance filed on February 13, 2004 for property taken from him, and a grievance filed a March 12, 2004 for damaged property. Plaintiff complains that neither of his grievances have received a response. Disposition of Staff Member section of this form reads as follows: "KER240-04-Step 2 was denied, you signed for it on 8-13-04. If you filed with ADLJ, I do not have access to any information on the status. There are no grievances with 2/13/04, 3/12/04, and 9/1/04 on them."

Finally, Plaintiff has submitted an affidavit from James Murphy (another KCI inmate), who attests that he served as Chairman of the Kershaw Inmate Representative Committee from June 2003 through April 2004. Murphy attests that Plaintiff was a representative for the Palmetto West Unit, Inmate Living Area, on this committee. Murphy attests that he was aware that inmates housed in the KCI SMU were not permitted to wear t-shirts or thermals while in segregation. Murphy further attests that he was "made aware" that KCI Grievance Coordinator "D. Mitchell" displayed a personal dislike for the Plaintiff, and that Plaintiff had complained to him [Murphy] that Mitchell was not processing his grievances. Murphy also attests that Warden Dunlap displayed a dislike of the Plaintiff and a lack of concern over the issues Plaintiff was raising. [4]

## Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that

---

[4]Murphy's affidavit also attests to a number of other matters which are not at issue in this lawsuit.



6

judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here, after careful consideration of the evidence and argument submitted by the parties, the undersigned finds and concludes that Plaintiff's claims are without merit, and that the Defendants are entitled to summary judgment in this case.

## I.

First, Defendants argue, inter alia, that this case is subject to dismissal because Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be pled and proven by the Defendant].  Pursuant to § 1997e(a), "[n]o action shall be brought with respect to prison conditions[5] under section 1983 of this Title, or any other federal law, by a prisoner confined in

---

[5] There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not

7



any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) [exhaustion required even though plaintiff claimed futility]; Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust such administrative remedies as were available through the SCDC grievance process.

In orders filed on May 9, 1996, this Court certified that the inmate grievance procedure established by the South Carolina Department of Corrections met the standards required by 42 U.S.C. § 1997e(a)(2). *See* the orders filed in Misc. No. 3:96-MC-83-2 and Misc. No. 3:96-MC-84-2 (D.S.C., May 9, 1996), which incorporate by reference SCDC PS-10.01 (May 1, 1996). In order to completely exhaust the SCDC administrative remedy, an inmate must fill out a Form 10-5, Step I about the matters raised in his Complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden will respond to the Step 1 grievance in writing no later than forty (40) days

---

        include habeas corpus proceedings challenging the fact or duration
        of confinement in prison.

Id. § 3626(g)(2). *See also* Hartsfield v. Vidor, 199 F.3d 305, 308 (6th Cir. 1999); Neal v. Goord, 267 F.3d 116, 2001 WL 1178293 (2d Cir., Oct 04, 2001) (quoting Lawrence v. Goord, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).



from the filing of the initial grievance.  If the inmate is not satisfied with the Warden's response, he or she must file an appeal of the Step I grievance response by filing a Form 10-5a, Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden.  A responsible official will have *sixty (60) days* to respond to the Step 2 grievance.  The decision of the "responsible official" who answers Step 2 is the Department's final response in the matter.

Defendants have submitted evidence to show that Plaintiff failed to exhaust his administrative remedies in this action with respect to either of his claims prior to filing this lawsuit.[6] Specifically, Plaintiff attests in his affidavit that he discovered his headset had been broken on March 12, 2004, and that it was not until September 13, 2004 that his t-shirts were removed from his SMU cell.  However, Defendants point out that Plaintiff was transferred from KCI to the Allendale Correctional Institution on May 25, 2004, and was not transferred back to KCI until December 30, 2004.  Therefore, he was not even at KCI when the alleged event concerning his t-shirts took place.  In any event, the Defendants have also submitted evidence to show that between February 2004 and May 2004 Plaintiff did not file any grievance concerning the confiscation of t-shirts or the temperature in his cell.  Beckwith Affidavit, Exhibit A-2.  Nor does Defendants' evidence reflect that Plaintiff filed any grievance relating to damage to his Walkman during that period of time.  Id.

---

[6]Although the undersigned is addressing both of Plaintiff's claims concerning his t-shirts and the destruction of his Walkman headset, the only claim alleged by the Plaintiff in his "Civil Complaint" is the claim concerning his placement in a cold or inadequately heated SMU cell while being denied "adequate clothing".  Plaintiff's claim concerning his Walkman is only discussed in the affidavit that has been attached to Plaintiff's Complaint, but is not mentioned or referred to as a claim in the Complaint itself.

9



While Plaintiff's Exhibit B references these claims, it is a Request to Staff Member form dated May 14, 2005, and was therefore submitted two (2) months *after* Plaintiff initiated this lawsuit. Plaintiff's Exhibit C, a purported letter to a "Mrs. Bowie" dated April 25, 2004, states that he had grieved these issues "over three months ago". However, no copies of these grievances have been provided to the Court, and, in any event, Plaintiff could not have grieved the issue concerning his Walkman three months prior to April 25, 2004, since he himself alleges he only discovered that his Walkman had been broken on March 12, 2004. Further, according to Plaintiff's own allegations, his t-shirts weren't taken from him until five (5) months *after* his alleged letter to Bowie.

Hence, in addition to Plaintiff having failed to provide copies of any grievances concerning these issues which have been completed through the SCDC grievance process, his own allegations concerning the filing of grievances and the timing of his complaints are both inconsistent with each other and with the evidence in the file. Therefore, since the Defendants have submitted affirmative evidence to show that Plaintiff failed to exhaust his administrative remedies with respect to these claims, and Plaintiff has failed to present evidence sufficient to rebut Defendants' evidence, this action is subject to dismissal for lack of exhaustion of administrative remedies.

## II.

Further, even assuming the Court were to find that Plaintiff has properly exhausted his administrative remedies with respect to these claims, he has still failed to submit sufficient facts or evidence to survive summary judgment on the merits of his claims. Considering Plaintiff's statement in his affidavit that he discovered his headset had been broken on March 12, 2004 to be true for purposes of summary judgment, this fact does not set forth a constitutional claim. Plaintiff has available state court remedies to pursue this claim; see S.C.Code Ann. § 15-69-10, et. seq.; and



because South Carolina has an adequate post-deprivation remedy for an alleged deprivation of property, Plaintiff's due process rights were not violated even if it is assumed that a correctional officer mishandled his personal property. Hudson v. Palmer, 468 U.S. 517-518 (1984); McIntyre v. Portee, 784 F.2d 566-567 (4th Cir. 1986); see also Ricci v. Paolino, No. 91-1994, 1992 WL 63521 at **2 - **3 (1st Cir. April 1992); Sanders v. South Carolina Dep't of Corrections, No. 03-1127, 2004 WL 3671283 at *8 (D.S.C. May 24, 2004). Cf. Longmoor v. Nilsen, No. 02-1595, 2004 WL 1660374 (D.Conn. July 23, 2004). Although prisoners may pursue property deprivation claims against state officials under § 1983 under some circumstances, such as where the deprivation is pursuant to an official policy, such is not the case under the facts presented here.  There is no allegation, nor any evidence, that any prison policy in place allows correctional officers to mishandle an inmate's personal property. See Lawrence v. Swanson Inmate Commissary Services, No. 97-6429, 1998 WL 322671 (4th Cir. June 4, 1998) [deprivation claims as a result of negligence fail to set forth a claim of constitutional magnitude]; cf. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Daniels v. Williams, 474 U.S. 327, 331 (1986).

With respect to Plaintiff's claim concerning being cold in his cell and not being provided with enough clothing, Plaintiff has again failed to present an issue of constitutional magnitude.  During the time period set forth in the Complaint, Plaintiff was a prisoner in the maximum security unit of a state correctional facility, not a hotel.  It should be expected that conditions in such a setting are oftentimes less than ideal. Lunsford v. Bennett, 17 F.3d 1574, 1581 (7th Cir. 1994); Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988)).

11



Plaintiff obviously had no "constitutional right" to a set number of t-shirts while in the SMU,[7] and Defendants have provided evidence to show that the temperature in the SMU is maintained at 72°. Defendants' evidence further reflects that there is no record of any work or repair orders that would have impacted the normal temperature in the SMU during the relevant time period.

For his part, Plaintiff has provided only general and conclusory allegations in his affidavit that it was "cold in the SMU rooms", and that he was "denied adequate clothing". Plaintiff does not describe the clothing he was allowed[8], nor has he provided any evidence, or even any specific allegations, as to what the temperature was in his cell or to support his claim that the conditions in his cell were so severe as to violate his constitutional rights. General and conclusory claims and allegations, absent any factual or evidentiary support, are simply not sufficient to survive a well supported motion for summary judgment. See Papasan v. Allain, 478 U.S. 265, 286 (1986)[Courts need not assume the truth of legal conclusions couched as factual allegations.]; Bender v. Suburban Hospital, Inc., 159 F.3d 186 (4th Cir. 1998); Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see also Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only

---

[7]In his response to the Defendants' motion for summary judgment, Plaintiff states that his t-shirts were actually taken from him on February 13, 2004, not September 13, 2004 as stated in his affidavit. Plaintiff's sworn affidavit, of course, is the evidence in this case. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]. Even assuming Plaintiff's claim concerning the confiscation of his t-shirts occurred while he was in the KCI SMU, however, for the reasons set forth hereinabove Plaintiff has still failed to set forth a viable constitutional claim.

[8]Defendants' evidence reflects that male inmates in the SMU are restricted to three pairs of underwear and a jumpsuit. Beckwith Affidavit, Exhibit A-4.

12



extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; Farmer v. Brennen, 114 S.Ct. 1970, 1979 (1994) [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."]; Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1997) ["Although prison officials need not intend that a known risk will actually harm an inmate, they must intentionally ignore this known risk in order to be liable under the Eighth Amendment."]; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) [in order to state a constitutional violation, the deprivation alleged must not only be "objectively significantly serious", but the Defendant must also have acted with a "sufficiently culpable state of mind"]. Therefore, this claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**, without prejudice, for failure to exhaust administrative remedies.  In the alternative, in the event the Court determines that a sufficient issue of material fact exists with regard to whether Plaintiff exhausted his administrative remedies (or was prevented by the Defendants from doing so) to avoid summary judgment on that issue, then in that event, it is recommended that the Defendants' motion for summary judgment



be **granted** as to Plaintiff's claims on the merits, and that this case be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

March 27, 2006



## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**901 Richland Street**
**Columbia, South Carolina 29201**
